James **WILLIAMS**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION A/K/A Amtrak and North Haven Medical Center.**

**No. 3:96CV2301 (AHN).**

United States District Court,
D. Connecticut.

July 24, 1998.

---

Laura Lee Dorflinger, Martyn Philpot Jr., New Haven, CT, for Plaintiff.

Albert Danker, Thomas Anderson, Robert Kiley, Hartford, CT, for Defendant.

## RULING ON DEFENDANT'S MOTION TO DISMISS

NEVAS, District Judge.

The plaintiff, James Williams ("Williams"), brings this action against the defendants, National Railroad Passenger Corporation a/k/a Amtrak ("Amtrak") and North Haven Medical Center ("North Haven"), alleging violations of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e–17 ("Title VII") and the Connecticut Fair Employment Practices Act, Conn. Gen.Stat. §§ 46a–51 to 46a–104 ("CFEPA"). Williams also brings state law claims for breach of contract, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of the covenant of good faith and fair dealing, negligence and recklessness.

Now pending before the court is North Haven's Motion to Dismiss. For the reasons set forth below, the motion [doc. # 18] is DENIED in part and GRANTED in part.

### STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all factual allegations in the complaint and must construe any well-pleaded factual allegations in the plaintiff's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir. 1991). A court may dismiss a complaint only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Still v. DeBuono,* 101 F.3d 888 (2d Cir.1996). The issue on a motion to dismiss "is not whether the plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.,* 727 F.Supp. 784, 786 (D.Conn.1990) (citing *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683). In deciding such a motion, consideration is limited to the facts stated in the complaint or in documents attached thereto as exhibits or incorporated therein by reference. *See Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991).

### FACTUAL BACKGROUND

Prior to his termination, Williams, a forty-nine year old African–American male, was employed by Amtrak, a public commuter railroad service. (*See* Compl. ¶¶ 3–4, 6.) Williams had held a position with Amtrak for approximately eighteen years. (*See id.* ¶ 6.) At the time of his dismissal, Williams's title was gang foreman. (*See id.* ¶ 10.)

On or about September 6, 1994, Amtrak compelled Williams to provide a urine sample to North Haven, a licensed Connecticut medical facility, for the purposes of drug testing. (*See id.* ¶¶ 5, 7.) Although these tests were allegedly random, Amtrak targeted Williams for testing based on his race. (*See id.* ¶ 8.) North Haven obtained and processed Williams's urine sample "in a procedurally defective" and "irregular manner." (*See id.* ¶ 7.) On September 9, 1994, North Haven learned that Williams's test result was positive. (*See id.* ¶ 9.) On the basis of this finding, Amtrak dismissed Williams on November 18, 1994. (*See id.* ¶ 10.) On November 15, 1996, Williams commenced this action against Amtrak and North Haven.

### DISCUSSION

The only claims asserted against North Haven are found in Count Eight of Williams's complaint.[1] North Haven raises two grounds in support of their motion to dismiss this Count. First, they contend that Williams's negligence claim sounds in medical malpractice and must be dismissed for his failure to comply with Conn. Gen.Stat. § 52–190a. Second, North Haven argues that Williams has not stated a claim for recklessness as a matter of law. In opposition, Williams argues that a faulty drug test does not fall within the scope of medical malprac-

---

1. Count eight provides that "[t]he negligent and/or reckless manner in which [North Haven] administered the 'random' drug test upon [Williams] was so procedurally defective that said test rendered a result which lacked integrity and any reasonable measure of accuracy and which further was unduly injurious to [Williams]." (Compl. at 8.)

tice. Williams further argues that he has properly stated a claim for recklessness.

### I. Conn. Gen.Stat. § 52–190a

■ The legislature's purpose in enacting Conn. Gen.Stat. § 52–190a was "to discourage the filing of baseless [medical malpractice claims] against health care providers." *LeConche v. Elligers*, 215 Conn. 701, 710, 579 A.2d 1 (1990). This section provides that

> [n]o civil action shall be filed to recover damages resulting from personal injury or wrongful death ... whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant.

Conn. Gen.Stat. Ann. § 52–190a(a) (West 1991). A "good faith" certificate must be filed with the complaint or initial pleading and must demonstrate the plaintiff's compliance with this statute. *See id.* If the plaintiff fails to file the certificate in a medical malpractice case, the complaint must be dismissed pursuant to Rule 12(b)(6). *See LeConche*, 215 Conn. at 711, 579 A.2d 1 (stating that the "absence ... [of a] good faith certificate renders the complaint subject to a motion to strike"). A good faith certificate is not, however, required in all cases simply because a health care provider is named as a defendant. Where a health care provider is accused of ordinary negligence, compliance with § 52–190a is unnecessary. *See Smith v. Mediplex of Westport*, No. CV 970159274S, 1998 WL 161170, at *2 (Conn.Super.Mar.25, 1998) (citing cases).

■ Here, contrary to North Haven's assertion, Williams has not alleged a medical malpractice claim. A claim for medical malpractice does not exist in the absence of a physician/patient relationship. *See Iurato v. Doyle*, No. CV 960334804S, 1997 WL 200783, at *2 (Conn.Super.Apr.16, 1997); *Iurato v. Doyle*, No. CV 960334804, 1997 WL 200772, at *2 (Conn.Super.Apr.16, 1997); *Casner v.*

*Fine*, No. CV 94–0462895S, 1995 WL 357357, at *3 (Conn.Super. May 22, 1995); *Pokorny v. Shafer*, No. CV93 052 83 75, 1994 WL 65213, at *1 (Conn.Super.Feb.24, 1994). The physician/patient relationship is consensual. *See Pokorny*, 1994 WL 65213, at *1. It arises where an individual seeks and obtains medical treatment or advice from a health care professional. *See id.*

■ This consensual physician/patient relationship is absent in this case because Amtrak allegedly compelled Williams to provide a urine sample to North Haven for the purposes of drug testing. The drug test was performed solely for the benefit of Amtrak. Furthermore, Williams was told by Amtrak to go to North Haven to have the test performed. *See Pokorny*, 1994 WL 65213, at *1 (finding that plaintiff's referral to independent medical examiner did not give rise to physician/patient relationship); *accord Lee v. City of N.Y.*, 162 A.D.2d 34, 560 N.Y.S.2d 700, 702 (N.Y.App.Div.1990) (recognizing that a physician-patient relationship is not established where a "physician is employed or retained by a third party to conduct an examination for the benefit of the third party").

Moreover, North Haven only collected and shipped Williams's urine sample to an outside laboratory for testing. Thus, North Haven acted merely as an intermediary between Amtrak and the testing laboratory. This type of activity does not constitute medical treatment or advice. *See Price v. Bossier City*, 693 So.2d 1169, 1173 (La.1997) (finding that plaintiff was not receiving "medical care," as that term was defined by statute when forced to undergo drug test at employer's direction); *Lynn v. Mount Sinai Med. Ctr.*, 692 So.2d 1002, 1004 (Fla.Dist.Ct.App. 1997) (noting that a drug test did not qualify as a "diagnosis" under Florida's medical malpractice statute because that term encompasses a course of treatment to effect a cure for an illness).

Because Williams's claim against North Haven does not sound in medical malpractice, North Haven's motion to dismiss count eight for Williams's failure to comply with Conn. Gen.Stat. § 52–190a is denied. Williams may properly pursue this claim on a

theory of negligence.[2] *See Stinson v. Physicians Immediate Care, Ltd.,* 269 Ill.App.3d 659, 207 Ill.Dec. 96, 646 N.E.2d 930, 934 (Ill.App. 2nd Dist.1995) (holding that a drug-testing facility owes a duty of reasonable care to individuals whose samples it tests for employers); *Lewis v. Aluminum Co. of Am.,* 588 So.2d 167, 170 (La.App.1991) (finding that plaintiff stated a claim for negligence where he alleged that laboratory did not "perform ... drug tests in a competent and non-negligent manner").

## II. *Recklessness*

North Haven next argues that Williams has failed to allege a cause of action for recklessness. Specifically, it contends that the mere use of the word "reckless" or "wilful" is insufficient, by itself, to state such a claim. In opposition, Williams argues that he has set forth sufficient facts to support his recklessness claim. The court disagrees.

■ A cause of action for recklessness is distinct from a claim for negligence and must be explicitly pleaded so that a defendant is on notice that such a claim is being raised. *See Warner v. Leslie–Elliott Constructors, Inc.,* 194 Conn. 129, 138, 479 A.2d 231 (1984); *Cardenas v. Mixcus,* No. CV 970158984S, 1998 WL 97698, at *2 (Conn.Super.Feb.26, 1998) (recognizing that "it is ... necessary to plead a [common law] cause of action grounded in recklessness separate and distinct from a negligence action") (citation and internal quotation marks omitted). Specifically,

> [r]ecklessness is a state of consciousness with reference to the consequences of one's acts. It is more than negligence, more than gross negligence. The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of

watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. Wanton misconduct is reckless misconduct. It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action.

*Dubay v. Irish,* 207 Conn. 518, 532, 542 A.2d 711 (1988) (internal citations and quotation marks omitted). In order to state a claim for recklessness, a plaintiff must do more than make conclusory allegations that a defendant's conduct was "reckless" and "wanton." *See Sheiman v. Lafayette Bank & Tr. Co.,* 4 Conn.App. 39, 46, 492 A.2d 219 (Conn.App. 1985).

■ Count eight of Williams's complaint contains no allegations demonstrating wanton or reckless behavior. Rather, he simply contends that North Haven administered the drug test in a "procedurally defective" manner. This connotes nothing more than ordinary negligence. Williams's attempt to state a claim for recklessness by adding the adjective "reckless" to his negligence allegations is improper and overlooks the distinction between these two causes of action. *See George v. Leopold,* No. 314997, 1996 WL 649296, at *4 (Conn.Super. Oct.31, 1996) (stating that "[s]imply reiterating [a] negligence ... claim[ ] and drawing the legal conclusion that these acts are wanton and reckless is insufficient to state a cause of action [for recklessness]"); *Doe v. Stamford Hosp.,* No. FA 970160804S, 1998 WL 182411, at *3 (Conn.Super.Apr.8, 1998) (finding that plaintiff did not state claim where she "fail[ed] to indicate what specific conduct by the defendants, above and beyond the conduct alleged in the negligence counts, amount[ed] to recklessness"). Accordingly, Williams claim for recklessness must be dismissed.[3]

---

**2.** This conclusion is further buttressed by the fact that Williams seeks property rather than personal injury damages from North Haven. The loss of property is not an injury contemplated by § 52–190a. *See* Conn. Gen.Stat. Ann. § 52–190a (governing claims seeking to recover damages for personal injury or wrongful death).

**3.** North Haven also seeks to dismiss Williams's request for punitive damages, back wages, employee benefits and reinstatement. Because

Williams fails to state a claim for recklessness, his request for punitive damages against North Haven also fails. *See Collens v. New Canaan Water Co.,* 155 Conn. 477, 489, 234 A.2d 825 (1967) (finding that "[p]unitive damages ... are awarded when the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of those rights") (citation omitted). The court need not address the appropriateness of these other damages

*CONCLUSION*

Based on the foregoing, North Haven's Motion to Dismiss [doc. # 18] is DENIED in part and GRANTED in part. The motion is denied as to plaintiff's negligence claim and granted as to the recklessness claim. The recklessness claim is dismissed without prejudice to replead within thirty (30) days from the date of this Ruling.

based on counsel's representation that Williams is not seeking back wages, employee benefits or

reinstatement from North Haven.